## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ANITA HOLLINS,**

    **Petitioner,**

  **v.**

           :

**SHELBIE SMITH, WARDEN,
DAYTON CORRECTIONAL
INSTITUTION,**

           :

    **Respondent.**

**Case No. 1:21-cv-2338**
**Judge Sarah D. Morrison**
**Magistrate Judge Jonathan D. Greenberg**

## <u>OPINION AND ORDER</u>

Petitioner Anita Hollins is serving a life sentence for aiding and abetting the commission of aggravated murder, murder, aggravated robbery, aggravated burglary, felonious assault, and kidnapping. In the instant Petition for a Writ of Habeas Corpus, Ms. Hollins asserts that her constitutional rights were violated during her state court proceedings. (ECF No. 1.) In particular, she argues that the jury's verdicts were impermissibly inconsistent (Claim One), that there was insufficient evidence to support her convictions (Claim Two), and that she was wrongly denied the right to cross-examine a witness (Claim Three). On October 27, 2022, the Magistrate Judge issued a Report and Recommendation recommending that the Petition be granted as to some of the inconsistent verdicts claim but denied in all other respects. (R&R, ECF No. 9.) Both Ms. Hollins and Respondent Warden Shelbie Smith filed timely objections. (ECF Nos. 10, 11.)

After conducting a *de novo* review, the Court concludes that none of Ms. Hollins's claims meet the stringent requirements for granting federal habeas relief. Accordingly, Ms. Hollins's Objections (ECF No. 10) are **OVERRULED** and the Warden's Objections (ECF No. 11) are **SUSTAINED**. The R&R is **REJECTED** insofar as it recommends granting relief on Claim One, but is **ADOPTED** and **AFFIRMED** in all other respects. The Petition is **DENIED** and the action is **DISMISSED**. A certificate of appealability is **GRANTED** as to Claim One.

## I.  BACKGROUND

The Magistrate Judge laid out the facts and procedural history of this case in the R&R. (R&R, PAGEID # 3602–05.) While the Court incorporates that summary by reference, it also reiterates the most relevant points here.

The State's evidence presented at trial established the following: In 2015, Ms. Hollins was attacked and hit over the head with a beer bottle while visiting Cooley Lounge, a Cleveland-area bar. *State v. Hollins*, No. 107642, 2020 WL 5250391, at *2 (Ohio. Ct. App. Sept. 3, 2020). In the words of the trial court, Ms. Hollins then "orchestrated a plan of attack on [Cooley Lounge] and everyone in it" as a form of "revenge." (Sentencing Trans., ECF No. 7-3, PAGEID # 3527.) Ms. Hollins put her plan in motion by asking a friend to share Cooley Lounge employees' work schedules. *Hollins*, 2020 WL 5250391, at *2. Then, on October 24, 2016, Ms. Hollins drove herself and three others (co-defendants in the State criminal action) to a location near the Lounge. *Id.* at *2. While Ms. Hollins waited in the car, the others entered the Lounge, produced weapons, assaulted several patrons, and killed

bartender Melissa Brinker. *Id.* They returned to the car and informed Ms. Hollins that Ms. Brinker had been killed. *Id.* at *3. Ms. Hollins responded, "that's what she get," and drove away. *Id.* Ms. Hollins was later confronted by a co-defendant who believed Ms. Hollins had misled him when she previously represented that there were no security cameras at the bar. *Id.*

For her role in the attack, Ms. Hollins was indicted on twenty-seven counts of aggravated murder, murder, aggravated robbery, aggravated burglary, felonious assault, and kidnapping. (ECF No. 6-1, PAGEID # 97–118.) A firearm specification was attached to each count, charging that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." (*Id.*, citing Ohio Rev. Code §§ 2941.141(A), 2941.145(A)). The State pursued the charges and specifications against Ms. Hollins under a theory of aiding and abetting, which required proof that Ms. Hollins "supported, assisted, encouraged, cooperated with, advised, or incited the principal [offender] in the commission of the crime, and that [Ms. Hollins] shared the criminal intent of the principal." *State v. Johnson,* 754 N.E.2d 796, 797 (syllabus) (Ohio 2001). (*See also* ECF No. 7-3, PAGEID # 3430 ("The State is not submitting to you that [Ms. Hollins] is the principal offender in this case . . . She is an aider and abettor, all right? And under the law in the State of Ohio, if you aid and abet the principal offender in the commission of the crime, you are just as guilty as if you are the principal offender[.]").)

Ms. Hollins stood trial and the jury returned a split verdict. (ECF No. 6-1, PAGEID # 120–21.) She was acquitted of all firearm specifications, one count of aggravated murder (Count 1), and one count of aggravated robbery (Count 24). (*Id.*) She was found guilty on three counts of aggravated murder (Counts 2, 3, and 4); one count of murder (Count 27); six counts of aggravated robbery (Counts 5, 6, 12, 15, 18, and 21); seven counts of kidnapping (Counts 7, 8, 13, 16, 19, 22, and 25); two counts of aggravated burglary (Counts 9 and 10); and three counts of felonious assault (Counts 11, 14, and 17).[1] The trial court entered judgment on the convictions and imposed a sentence of life in prison. (*Id.*, PAGEID # 122–25.)

Ms. Hollins appealed the verdict on several grounds, including the three presented here. (*Id.*, PAGEID # 140–97.) Ohio's Eighth District Court of Appeals rejected her arguments and affirmed the jury's verdict. *Hollins*, 2020 WL 5250391. The Ohio Supreme Court denied review. *State v. Hollins*, 159 N.E.3d 287 (table) (Ohio 2020).

Ms. Hollins then filed the instant Petition, alleging that the state proceedings violated her constitutional rights. (Petition, ECF No. 1.) The Petition was referred to the Magistrate Judge, who recommended that the Court grant the Petition in part and deny it in part. Both parties filed timely objections to the R&R.

---

[1] The remaining counts (Counts 20, 23, and 26) were nolled. *See* Ohio Rev. Code § 2941.31.

## II.     STANDARD OF REVIEW

The Court reviews *de novo* those portions of the R&R to which the parties objected. *See* 28 U.S.C. § 636(b)(1). After review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") applies to this case. The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. Specifically, the AEDPA directs courts not to grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors. Only § 2254(d)(1) is at issue in this case.

As the Sixth Circuit recently explained, a petitioner "must show two basic things" to be entitled to habeas relief for a state court's legal error. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (*en banc*). First, she "must identify a 'clearly established' principle of 'Federal law' that the 'Supreme Court' has pronounced." *Id.*

5

(quoting 28 U.S.C. § 2254(d)(1)). A petitioner may "seek relief based on just one source: 'Supreme Court' decisions." *Id.* She may not rely on circuit court decisions. *Id.* And she "may not sidestep the lack of Supreme Court precedent on a legal issue by raising the level of generality at which [she] describe[s] the Court's holdings on other issues." *Id.* (internal quotation and citation omitted).

Second, a petitioner "must show that a state court's denial of relief was 'contrary to' or an 'unreasonable application' of [that] holding." *Id.* (quoting 28 U.S.C. § 2254(d)(1)). "A state court's adjudication of a claim is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.'" *Stojetz v. Ishee*, 892 F.3d 175, 192 (6th Cir. 2018) (quoting *Van Tran v. Colson*, 764 F.3d 594, 604 (6th Cir. 2014)). A state court decision involves an "unreasonable application" of Supreme Court precedent if the "'state court identifies the correct governing legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case.'" *Id.* (quoting *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007)). A federal court may not find a state adjudication to be "unreasonable" simply because the state court applied clearly established federal law erroneously or incorrectly. *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 263, 411 (2000)). Rather, for purposes of § 2254(d)(1), an application of a Supreme Court holding "is 'unreasonable' only if the petitioner shows that the state court's ruling

'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Stojetz*, 892 F.3d at 192 (quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014)).

## III.    PETITIONER'S CLAIMS

With those standards in mind, and after careful review of the law and the record, the Court concludes that Ms. Hollins falls outside the narrow eligibility for habeas relief. The Court discusses each of her claims in turn.

### A.    Claim One: Inconsistent Verdicts

In Claim One, Ms. Hollins asserts that the jury violated her due process rights by returning inconsistent verdicts. (ECF No. 10, PAGEID # 3641.) That claim fails because Ms. Hollins has not identified any "clearly established" Supreme Court precedent holding that a jury cannot reach inconsistent verdicts. *See Fields,* 86 F.4th at 226 (finding that failure to identify applicable Supreme Court precedent "dooms [petitioner's] claims").

#### 1.    Background

Ms. Hollins was convicted of aiding and abetting several offenses that require, as an essential element, use of a firearm. Those "Essential Element Offenses" are aggravated robbery (Counts 5, 12, 15, 18, and 21); aggravated burglary (Count 10); and felonious assault (Counts 14 and 17).[2] But, as Ms. Hollins

---

[2] As charged, each Essential Element Offense required the use of a "deadly weapon," which the indictment specified as a firearm. *See* Ohio Rev. Code §§ 2911.01(A)(1) (aggravated robbery); 2911.11(A)(2) (aggravated burglary); 2903.11(A)(2) (felonious assault). The Magistrate Judge did not identify felonious assault as an Essential Element Offense, despite its deadly weapon requirement.

points out, the jury acquitted her of all firearm specifications. Ms. Hollins argues that those acquittals represent the jury's "direct determination . . . that [she] was unaware of and in no way participated in the firearm." (ECF No. 10, PAGEID # 3646.) In her view, the specification acquittals negate the firearm element of each Essential Element Offense conviction. (*Id.*) She contends that, by affirming the verdict in spite of that fact, the state courts violated her constitutional right to have a jury find her guilty of each element of an offense beyond a reasonable doubt. (*Id.*, PAGEID # 3641.)

## 2.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge agreed with this reasoning and recommended granting the Petition as to the Essential Element Offenses, except the felonious assault counts. (R&R, PAGEID # 3621.)

First, the Magistrate Judge laid out existing federal law on inconsistent verdicts, quoting extensively from *United States v. Randolph*, 794 F.3d 602 (6th Cir. 2015). (*Id.*, PAGEID # 3616–20.) In *Randolph*, the Sixth Circuit vacated a federal conviction on direct appeal because a jury inconsistently answered questions about the essential elements of a single offense on a special verdict form. *Randolph*, 794 F.3d at 606, 608.

Next, the Magistrate Judge turned to the verdicts in Ms. Hollins's case. The R&R explained that a firearm was an essential element of aggravated robbery and

---

That is further addressed in response to Ms. Hollins's objection. *See infra,* Part III.A.4.c.

aggravated burglary. (R&R, PAGEID # 3621.) It further explained that, to convict

Ms. Hollins on the firearm specifications, the jury needed to conclude

> beyond a reasonable doubt that the defendant had a firearm on or about
> [her] person or under [] her control while committing the offense and
> displayed the firearm, brandished the firearm, indicated possession of
> the firearm, or used the firearm to facilitate the commission of the
> offense.

(*Id.* (quoting ECF No. 7-3, PAGEID # 3360–61.))

Finally, relying on the holding in *Randolph* and the requirements of state

law*,* the Magistrate Judge concluded that Ms. Hollins's convictions for aggravated

robbery and aggravated burglary were impermissibly inconsistent with acquittal on

the firearm specifications because "[w]here, as here, 'a jury's special verdict finding

negates an essential element of the offense, the defendant must be acquitted[.]'" (*Id.*

(quoting *Randolph*, 794 F.3d at 620.)) The R&R thus recommended granting the

Petition to that extent and ordering a judgment of acquittal as to Counts 5, 10, 12,

15, 18, and 21. (*Id.*) It further recommended denying relief on Claim One as to the

remaining counts because "a firearm was not an essential element" of those

offenses. (*Id.*, PAGEID # 3621–23.)

### 3.   Objections to the Report and Recommendation

Both parties object to the Magistrate Judge's recommendation as to Claim

One. While Ms. Hollins largely agrees with the application of *Randolph*, she argues

that the Magistrate Judge should have recommended relief on the felonious assault

convictions (Counts 14 and 17) as Essential Element Offenses, and that the

acquittals on the firearm specifications undermined all of her convictions because a

firearm was used to commit all of the offenses. (ECF No. 10.) The Warden contends

that *Randolph* is not clearly established federal law for the purpose of granting habeas relief, and that the verdicts are not impermissibly inconsistent under existing Supreme Court precedent. (ECF No. 11.)

  **4.**  **Discussion**

    **a)**  **Clearly established federal law does not prohibit inconsistent verdicts.**

  Claim One fails because Ms. Hollins has not identified any principle of clearly established federal law that prohibits inconsistent verdicts. It bears repeating that, in a habeas petition, "prisoners [can] seek relief based on just one source: 'Supreme Court' decisions." *Fields,* 86 F.4th at 231 (citing 28 U.S.C. § 2254(d)(1)). Here, Ms. Hollins has not pointed to, and the Court has not identified, a single Supreme Court holding that supports her claim.

  On the contrary, the Supreme Court has repeatedly made clear that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera,* 454 U.S. 339, 345 (1981). This notion has become known as *Dunn-Powell.* In *Dunn v. United States,* a prohibition-era case, the defendant was found guilty of keeping liquor for sale but acquitted of possessing and selling liquor. 284 U.S. 390, 391–92 (1932). Dunn argued that his conviction ought to be overturned because the verdicts were inconsistent. *Id.* at 392. The Court rejected his argument, holding that "[c]onsistency in the verdict is not necessary." *Id.* at 393. The Court went on to say that apparently inconsistent verdicts "may have been the result of compromise, or of a mistake on the part of the jury" but that they nevertheless "cannot be upset by speculation or inquiry into such matters." *Id.* at 394.

10

Fifty years later, in *United States v. Powell*, the defendant was convicted of using a telephone to facilitate the possession and distribution of cocaine but acquitted of conspiring to distribute or possess cocaine. 469 U.S. 57, 59–60 (1984). Powell argued that the verdicts were inconsistent and warranted reversal because "proof that she had conspired to possess cocaine . . . was an element of each of the telephone facilitation counts." *Id*. at 60. Again, the Supreme Court disagreed, holding that inconsistent verdicts were not a ground for relief—"even verdicts that acquit on a predicate offense while convicting on the compound offense." *Id*. at 65. The Court expanded on the good reason for letting "inconsistent" verdicts stand:

> [I]nconsistent verdicts . . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.

*Id*.

The Sixth Circuit has applied *Dunn-Powell* in habeas petitions like Ms. Hollins's—that is, petitions challenging Ohio convictions that are arguably inconsistent with acquittal on an accompanying specification. In *Mapes v. Coyle,* the defendant challenged his conviction for aggravated murder because he had been acquitted on two specifications. 171 F.3d 408, 419–20 (6th Cir. 1999). Mapes contended that his acquittal on the specifications was "logically inconsistent" with the jury's guilty verdict on aggravated murder. *Id*. at 419. He argued that "if the state court judgment is allowed to stand, [he] will have been convicted of aggravated

murder although the jury found one of the essential elements lacking." *Id*. The
Sixth Circuit held that the argument was foreclosed by *Powell*, reiterating the
Supreme Court's conclusion that "inconsistent verdicts are viewed completely
separately, and that no conclusion may be drawn from comparing the two." *Id*. at
420. *See also Freeman v. Lebanon Corr. Inst. Superintendent,* No. 98-3784, 1999 WL
801573, at *2 (6th Cir. Sept. 28, 1999) (affirming dismissal of a habeas petition in
part because "mere inconsistency in a jury's verdict [between a principal offense and
specification] does not warrant habeas corpus relief").

District courts have also applied *Dunn-Powell* to deny habeas relief where
there was an apparent inconsistency involving a specification under Ohio law. Most
on point is *Davis v. Morgan,* where the petitioner was convicted of aggravated
robbery but acquitted of attached firearm specifications. No. 5:15-CV-586, 2016 WL
3950812 (N.D. Ohio May 26, 2016), *report and recommendation adopted,* 2016 WL
3903177 (N.D. Ohio July 19, 2016). The *Davis* court concluded that the purported
inconsistency was not cognizable on federal habeas review. *Id.* at *5*; see also Beach*
*v. Moore,* No. 3:06-CV-478, 2007 WL 1567669, at *16 (N.D. Ohio May 24, 2007)
(rejecting argument based on an inconsistency between verdicts on aggravated
murder and firearm specification); *Bolton v. Harris,* No. 1:18-CV-1164, 2021 WL
1930239, at *28–29 (N.D. Ohio April 7, 2021), *report and recommendation adopted,*
2021 WL 1929117 (same, as to weapons on disability offense and firearm
specification).

These cases illustrate that clearly established federal law takes no offense to inconsistent verdicts on a principal offense and specification. As the Supreme Court has explained: "Consistency in the verdict is not necessary." *Dunn,* 284 U.S. at 393. The state court did not act unreasonably, then, in failing to vacate Ms. Hollins's convictions on the Essential Element Offenses.[3]

> **b)** ***United States v. Randolph* is distinguishable.**

Both Ms. Hollins and the Magistrate Judge rely heavily on *United States v. Randolph*, 794 F.3d at 602, in arriving at the opposite conclusion. That reliance is misplaced for three reasons.

First, and most importantly, *Randolph* was issued by the Sixth Circuit—not the Supreme Court. Very recently, the Sixth Circuit itself reiterated that a habeas petitioner can "seek relief based on just one source: 'Supreme Court' decisions." *Fields,* 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1)); *see also Kernan v. Cuero,* 583 U.S. 1, 8 (2017) ("[C]ircuit precedent does not constitute 'clearly established

---

[3] What's more, it is not clear that the jury's verdicts here were inconsistent as a matter of state law. *See, e.g., State v. Arnold*, No. C-220253, 2023 WL 3485506, at *7 (Ohio Ct. App. May 17, 2023) (finding that "[a]n accomplice can be found guilty of felonious assault . . . even without being convicted of a gun specification, if the principal was responsible for using or discharging a weapon, and the accomplice aided and abetted the principal in their crime.") (collecting cases); *cf. State v. Ross*, No. 22096, 2008 WL 1112627, at *4–5 (Ohio Ct. App. April 11, 2008) ("It is well-established by courts in Ohio that 'a finding of guilty on a principal charge but not guilty on a specification attached to the charge does not render the verdict inconsistent and thus invalidate the guilty verdict on the principal charge, at least where legally sufficient evidence supports the guilty verdict on the principal charge.'") (internal citation omitted).

Federal law, as determined by the Supreme Court.'") (further citation omitted). Relying solely on *Randolph* dooms Ms. Hollins's first claim. *Fields,* 86 F.4th at 226.

Second, the verdict reviewed in *Randolph* is distinguishable from the verdict at issue here. In *Randolph*, the jury completed a special verdict form. 794 F.3d at 607. The jury first indicated that the defendant was guilty of a drug trafficking conspiracy charge. *Id.* The form then asked the jury to determine the amount of drugs "involved in the conspiracy"—to which it responded "None." *Id.* The Sixth Circuit reviewed Dunn, Powell, and other precedent on inconsistent verdicts. *Id.*, at 609–11. But the court did not view the special verdict form as "inconsistent verdicts"—instead, it saw "an internal inconsistency in the same count, as it relates to the same defendant, in the same verdict." *Id.* at 610–11. The court vacated the conviction because the jury's response on the special verdict form negated an essential element of the same offense. *Id.* at 613.

Finally, even if Ms. Hollins and the Magistrate Judge were correct that *Randolph* should apply, the AEDPA mandates that this Court defer to the state court's decision. Under the AEDPA, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court decision was erroneous . . . [r]ather, [the state court's decision] must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks omitted). In Ms. Hollins's case, the state court specifically rejected *Randolph*'s application, and found that any inconsistency between the principal offense convictions and specification acquittals was permissible. *Hollins*, 2020 WL

14

5250391, at *5. Because the state court's decision was not objectively unreasonable, the AEDPA mandates that this Court defer to it.

In sum, the Magistrate Judge's R&R is **REJECTED** in so far as it recommends granting relief on Counts 5, 10, 12, 15, 18, and 21. It is **ADOPTED** in all other respects as to Claim One.

### c)    Ms. Hollins's Objections are Unpersuasive.

Ms. Hollins makes two arguments in favor of the contrary result. Neither is persuasive. First, Ms. Hollins argues that the Magistrate Judge should have extended his logic to the two felonious assault convictions. (ECF No. 10, PAGEID # 3642–43.) While the Court agrees that the R&R erred by not treating felonious assault as Essential Element Offenses, the error is of no moment because the Court has rejected that portion of the R&R. Second, Ms. Hollins argues that the jury's finding on the firearm specifications undermined all of her convictions because a firearm was used to commit the offenses. (*Id.*, PAGEID # 3643–47.) But the Court has also rejected that underlying line of reasoning. At bottom, clearly established federal law does not impose a duty on a state court to vacate a conviction that is arguably inconsistent with an acquittal on an attached firearm specification. Ms. Hollins, then, cannot show that the state court's decision to affirm the jury's verdicts was contrary to or an unreasonable application of federal law.

### d)    Certificate of Appealability

Although this Court will not grant the relief, Claim One could warrant further consideration on appeal. A petitioner challenging a state conviction in

federal habeas may not appeal a district court's denial of relief without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1). To receive a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." § 2253(c)(2). A substantial showing "means 'showing that reasonable jurists could debate whether' relief should have been granted." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (holding that a COA should be granted when "jurists of reason could disagree with the district court's resolution of [petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further"). The Sixth Circuit has stressed that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody*, 958 F.3d at 488. In other words, "a certificate is improper if any outcome-determinative issue is not reasonably debatable." *Id.*

Here, reasonable jurists could differ—and have—on whether Ms. Hollins is entitled to any relief on Claim One. *Cf. Powell*, 469 U.S. at 69 n.8 ("Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other."). Accordingly, the Court **GRANTS** Ms. Hollins a COA as to Claim One.

### B.      Claim Two: Sufficiency of the Evidence

Ms. Hollins next contends that there is insufficient evidence to support her convictions and objects to the Magistrate Judge's contrary conclusion. (ECF No. 10, PAGEID # 3648–50.) Ms. Hollins advances two arguments in support of her sufficiency objection. First, she argues that there was insufficient evidence to prove that she had the purpose to aid and abet the killing of Ms. Brinker. Second, she contends that her acquittal on all firearm specifications shows that there was insufficient evidence to prove that she had knowledge of a firearm, which is an essential element of numerous offenses. The Warden responds that the sufficiency challenge is a reiteration of the inconsistent-verdicts challenge and is thus non-cognizable on habeas review. (ECF No. 11, PAGEID # 3660, 3667.) The Warden further argues that deference should apply to the state court's sufficiency determination. (*Id.*, PAGEID # 3667–75.)

An insufficient-evidence challenge states a claim under the Fourteenth Amendment's Due Process Clause. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 359 (1970); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (*en banc*). For a conviction to be constitutionally sound, every element of the crime must be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

17

*Jackson*, 443 U.S. at 319 (internal citation omitted). *See also Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

Because this case is governed by the AEDPA, the state court's sufficiency decisions are entitled to two levels of deference:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (internal citations omitted) (emphasis in original). Thus, in reviewing the sufficiency of the evidence, a federal habeas court must give deference to the jury's verdict (under *Jackson v. Virginia*) and then to the appellate court's evaluation of that verdict (under the AEDPA). *Id.* Stated another way:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could

have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*) (internal quotations and citations omitted). *See also Thomas v. Stephenson,* 898 F.3d 693, 698 (6th Cir. 2018) (noting in light of *Jackson* and the AEDPA that a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited").

Ms. Hollins's first argument—that there is insufficient evidence that she purposely aided and abetted the aggravated murder of Ms. Brinker—cannot overcome the two levels of deference that this Court must apply. Because the state court properly applied the *Jackson* standard in reviewing whether the evidence was sufficient to support the jury's verdict, Ms. Hollins must show that the state court's finding of sufficient evidence was "objectively unreasonable." *Coleman*, 566 U.S. at 651. Ms. Hollins cannot make that showing.

Consider first the "substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324 n.16. To be convicted of aiding and abetting aggravated murder, Ms. Hollins must have "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the" murder and she must have "shared the criminal intent of the principal." *Johnson*, 754 N.E.2d at 801. In other words, Ms. Hollins must have acted with the purpose to kill Ms. Brinker. *See* Ohio Rev. Code § 2903.01(B). That purpose can be inferred if a

19

homicide occurred during the commission of an aggravated robbery and Ms. Hollins entered into a

> common design with others to commit armed robbery by the use of force, violence, and a deadly weapon, and all the participants [were] aware that an inherently dangerous instrumentality [was] to be employed to accomplish the felonious purpose[.]

*Hollins,* 2020 WL 5250391, at *8 (collecting cases).

Evaluating the evidence introduced at trial in view of those substantive requirements, a rational jury could have concluded that Ms. Hollins shared the purpose of killing Ms. Brinker. Ms. Hollins had been assaulted at Cooley Lounge, and there was evidence that she instigated and planned the events that led to Ms. Brinker's death as a form of revenge. She was with the principal offenders on the night of the murder, drove them to a location near the Lounge, waited for them to return, and then drove them away. One witness testified that after Ms. Hollins learned of Ms. Brinker's death, Ms. Hollins said "That's what she get." Viewing the evidence in the light most favorable to the prosecution, as the Court must, a jury could have rationally concluded that Ms. Hollins aided and abetted Ms. Brinker's purposeful killing.

Ms. Hollins next argues that there was insufficient evidence to support a conviction for any offense involving a firearm, because the jury acquitted her of all firearm specifications. (ECF No. 10, PAGEID # 3648.) But "inconsistent does not mean unconstitutional, even when 'presented as an insufficient evidence argument.'" *Jones v. Lazaroff,* No. 1:14-CV-2549, 2016 WL 93520, at *2 (N.D. Ohio Jan. 8, 2016) (quoting *Powell,* 469 U.S. at 68). Further, Ohio law allows a jury to

conclude that Ms. Hollins did not personally know about or possess the firearm, while still finding that she aided and abetted offenses that required a firearm as an essential element. *See State v. Kimble,* No. 06-MA-190, 2008 WL 852074, at *7–8 (Ohio Ct. App. Mar. 17, 2008) (explaining that a defendant could be convicted of aiding and abetting a crime which requires use of a firearm "even though [the defendant was] unarmed and had no knowledge that the firearm was being used").

Ms. Hollins has not established that the state court's decision on sufficiency of the evidence was objectively unreasonable. Claim Two thus fails.

The Court **ADOPTS** the R&R as to Claim Two and **OVERRULES** Ms. Hollins's Objections. Reasonable jurists could not debate that conclusion, so the Court denies a COA as to Claim Two.

### C.    Claim Three: Sixth Amendment Violation

Finally, in Claim Three, Ms. Hollins argues that the trial court violated her rights by denying her the opportunity to question her co-defendant Gary Lake about a statement he made to his attorney. The statement was inadvertently recorded, but purportedly made it "clear Lake was making false/inaccurate statements related to Anita Hollins for his own benefit." (ECF No. 1, PAGEID # 9.) Ms. Hollins contends that the state court's refusal to allow questioning about Mr. Lake's statement violated her Sixth Amendment and due process rights because "Lake was permitted to give testimony against her, known to be false and she was not permitted to cross-examine him." (ECF No. 10, PAGEID # 3650–54.)

21

The Magistrate Judge determined that there was no constitutional violation. (R&R, PAGEID # 3635.) The Magistrate Judge further concluded that any such violation would have been harmless and thus would not warrant relief. (*Id.*, PAGEID # 3637.) Ms. Hollins objects to those conclusions on three fronts. First, she asserts that there was a Sixth Amendment and due process violation. (ECF No. 10, PAGEID # 3650–51.) She further argues that the violation prejudiced her trial. (*Id.*, PAGEID # 3651–53.) Finally, she disagrees with the state court's determination that Mr. Lake's testimony was protected by the attorney-client privilege. (*Id.*, PAGEID # 3650–51.)

After reviewing Ms. Hollins's Objections, the Court **ADOPTS** the R&R's conclusion that the Third Claim is meritless. Ms. Hollins has not carried her burden of identifying clearly established federal law that guarantees a "cross-examination that is effective in whatever way, and to whatever extent [she] might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

### 1. Constitutional Violation

In her first argument, Ms. Hollins asserts that there was a constitutional violation. To be sure, the Sixth Amendment affords a defendant the right to cross-examine witnesses. U.S. Const. amend. VI; *Van Arsdall*, 475 U.S. at 678 (explaining that "the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination") (internal quotation marks, citations, and alterations omitted). And a court's exclusion of relevant evidence can violate the proponent's due process rights—but *only if* the exclusion "'offends some principle of

justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (internal quotation and citation omitted). On the other hand, a defendant's right to introduce evidence is not "unfettered"—indeed, he may be prevented from putting on evidence "that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois,* 484 U.S. 400, 410 (1988). *See also Van Arsdall*, 475 U.S. at 679 (noting that trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination"). In short, the Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

The state trial court did not violate clearly established Federal law when it limited Ms. Hollins's cross-examination of Mr. Lake. To this Court's knowledge, the Supreme Court has not declared a winner when a defendant's Sixth Amendment right comes up against a witness's attorney-client privilege. *See Murdoch v. Castro*, 609 F.3d 983, 993 (9th Cir. 2010) (denying habeas relief in part because "no Supreme Court case has directly addressed the potential conflict between state-law attorney-client privilege and the Confrontation Clause"). What's more, the trial court did not forbid Ms. Hollins from cross-examining Mr. Lake—it simply limited questioning of him about privileged communications. The court did not violate Ms. Hollins's rights in doing so.

23

### 2. Prejudice

Even if there were a constitutional error, relief would still not be warranted. On habeas review, a petitioner must show that a Sixth Amendment error resulted in "actual prejudice" to obtain relief, which requires "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala,* 576 U.S. 257, 267–68 (2015) (internal quotation and citations omitted). Because ample other evidence supports Ms. Hollins's conviction, any error caused by the trial court's failure to allow cross-examination on Mr. Lake's privileged communication was harmless.

Ms. Hollins argues that she has shown actual prejudice, citing *James v. Illinois,* 493 U.S. 307 (1990). (ECF No. 10, PAGEID # 3651–53.)  In *James*, the Supreme Court determined that evidence obtained in violation of the Fourth Amendment could not be used by the prosecution to impeach a defense witness. 493 U.S. at 319–20. Here, however, Ms. Hollins' makes an argument under the Sixth Amendment, not the Fourth. She is not permitted to "sidestep the lack of Supreme Court precedent on a legal issue by raising the 'level of generality' at which [she] describes the Court's holdings on other issues." *Fields,* 86 F.4th at 232. For that reason, *James* is unpersuasive.

### 3. Applicability of the Attorney Client Privilege

Finally, Ms. Hollins argues that the state court incorrectly determined that the attorney-client privilege applied to Mr. Lake's testimony. (ECF No. 10, PAGEID # 3651.) But that issue is not cognizable on federal habeas review. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988) (articulating "the clearly established rule

that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding"). *Cf. Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) (noting that "a violation of the attorney-client privilege is not *itself* a 'violation [ ] of the United States Constitution or its laws and treaties,' as is required by § 2254 before we may issue habeas on a given claim").

Claim Three is also unsuccessful. The Court **ADOPTS** the Magistrate Judge's R&R as to Claim Three and **OVERRULES** Ms. Hollins' objections. Reasonable jurists could not debate that conclusion, so the Court denies a COA.

## IV.    CONCLUSION

For the reasons set forth above, Ms. Hollins's Objections (ECF No. 10) are **OVERRULED** and the Warden's Objections (ECF No. 11) are **SUSTAINED**. The R&R is **REJECTED** as to Claim One insofar as it recommends directing acquittal on Counts 5, 10, 12, 15, 18, and 21. It is **ADOPTED** and **AFFIRMED** in all other respects. The Petition is **DENIED** as to all Claims and the action is **DISMISSED**. Nonetheless, the Court **GRANTS** a certificate of appealability as to Claim One.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

25